# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DOMINIQUE GRAFTON,

        Petitioner,

v.                                                              Case No. 08-CV-743

MICHAEL THURMER,

        Respondent.

_____

## ORDER

On September 2, 2008, petitioner Grafton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in Milwaukee County Circuit Court, Grafton was found guilty of felony murder, as provided in Wis. Stat. § 940.03 (2005-06). Grafton was sentenced to thirty-five years of initial confinement and thirteen years of extended supervision. Grafton is currently confined to the Waupun Correctional Institution in Waupun, Wisconsin.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts authorizes a district court to conduct an initial screening of habeas corpus petitions and to dismiss a petition summarily where "it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief." This rule provides the district court the power to dismiss both those petitions that do not state a claim upon which relief may be granted as well as those petitions that are factually frivolous. *See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Upon an initial Rule 4 review of habeas petitions, the court will analyze whether the petitioner has

avoided statute of limitations bars, exhausted available state remedies, avoided procedural default, and set forth cognizable constitutional or federal law claims.

The court begins its Rule 4 review by examining the timeliness of Grafton's petition. A state prisoner in custody pursuant to a state court judgment has one year from the date "the judgment became final" to seek federal habeas relief. 28 U.S.C. § 2244(d)(1)(A). A judgment becomes final within the meaning of § 2244(d)(1)(A) when all direct appeals in the state courts are concluded followed by either the completion or denial of certiorari proceedings in the U.S. Supreme Court or, if certiorari is not sought, at the expiration of the ninety days allowed for filing for certiorari. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

Here, it appears Grafton's petition is timely. According to the information provided in his federal habeas petition, Grafton's conviction became final on September 8, 2008, which was ninety days after the Wisconsin Supreme Court denied Grafton's petition for review.

The court continues its Rule 4 review by examining Grafton's petition to determine whether he has exhausted his state remedies. The district court may not address the merits of the constitutional claims raised in a federal habeas petition "unless the state courts have had a full and fair opportunity to review them." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). Accordingly, a state prisoner is required to exhaust the remedies available in state court before a district court will consider the merits of a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). If a federal habeas petition has even a single unexhausted claim, the district court must dismiss

the entire petition and leave the petitioner with the choice of either returning to state court to exhaust the claim or amending or resubmitting the petition to present only exhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269, 278 (2005). A prisoner exhausts his constitutional claim when he presents it to the highest state court for a ruling on the merits. *Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990). Once the state's highest court has had a full and fair opportunity to pass upon the merits of the claim, a prisoner is not required to present it again to the state courts. *Humphrey v. Cady*, 405 U.S. 504, 516 n.18 (1972).

Here, it appears that the claims in Grafton's petition are exhausted. Grafton presents the following four claims for relief in his petition: 1) he was denied due process because a juror mentioned in a phone call to someone that the juror was serving in a criminal case; 2) he was denied effective assistance of counsel when his trial counsel failed to take action regarding the telephoning juror; 3) he was denied due process when the prosecutor "vouched" for the credibility of the state's witnesses during closing arguments; and 4) he was denied the effective assistance of counsel when his attorney failed to object to the prosecutor "vouching" for the witnesses. Each of Grafton's claims were considered and rejected by the Wisconsin Court of Appeals, and the Wisconsin Supreme Court denied Grafton's petition for review of the Court of Appeals' ruling on these claims. Therefore, these claims appear to have been fully exhausted in state court.

The court next reviews Grafton's petition under Rule 4 to determine whether he has procedurally defaulted on any of his claims. Even though a constitutional claim in a federal habeas petition has been exhausted, the court is still barred from considering the claim if it has been procedurally defaulted by the petitioner. *See Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002). A state prisoner procedurally defaults on a constitutional claim in a habeas petition when he fails to raise the claim in the state's highest court in a timely fashion. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A state prisoner may also procedurally default on a constitutional claim in a habeas petition by failing to raise the claim in a manner prescribed by state procedural laws. *See Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000).

Here, the court finds that Grafton has not procedurally defaulted on his claims. All of his claims were presented and considered on the merits by the Wisconsin Court of Appeals, and Grafton sought timely discretionary review in the Wisconsin Supreme Court.

The court concludes its Rule 4 review by screening for patently frivolous and speculative claims in Grafton's federal habeas petition. *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Given the facts underlying Grafton's claims, the court is obliged to find that these claims are indeed frivolous. As to the claim that Grafton was prejudiced by the juror's communication with an outside party via cell phone during deliberations, the court, like the Wisconsin Court of Appeals, finds the claim lacking any merit. The court readily concedes that the juror should not have been

on her cell phone during deliberations in the jury room – indeed, the court questions why she even had access to her cell phone while in the jury room – however, the court finds that the facts simply do not support petitioner's claim. Apparently, one of the jurors reported that another juror was speaking on her cell phone during deliberations, and that she mentioned to the person she was speaking with that the trial at which she was sitting as a juror was a criminal trial. The trial court stated that though the juror technically disobeyed the admonition not to talk about the case, it was "really not very significant," and thus no further action was taken. The Wisconsin Court of Appeals concurred with the trial court's assessment, and further pointed out that the jury was instructed to consider only the evidence, and that the jurors all informed the court that they could fairly and objectively decide the case based on the evidence and not based on any out-of-court discussions. Given that jurors are presumed to follow the court's instructions, *State v. Truax*, 444 N.W.2d 432 (Wis. App. 1989), and that the third party communication was very insignificant, the court finds not only that it did not violate any of petitioner's due process rights, but also that defense counsel was not ineffective for inquiring further into the matter.

Petitioner's argument is that any "unapproved private communication" with a juror is "presumptively prejudicial." *Remmer v. U.S.*, 347 U.S. 227, 229 (1954). However, *Remmer* is very distinguishable from the instant case. In *Remmer* a juror was told the he could profit by returning a certain verdict. *Id.* at 228. The trial judge was made aware of the communication, and he in turn alerted the prosecution. The FBI then investigated the matter. *Id.* Neither the defendant nor defense counsel

-5-

learned of any of this until after the jury returned its verdict. *Id.* These facts are a far cry from those presented in the instant case. While the communication in *Remmer* was directed from a third party to a juror, the communication in the instant case was from a juror to a third party. More significantly, the communication in *Remmer*, on its face, appeared to be designed to influence the outcome of the trial; the same cannot be said for the communication in the instant case. Lastly, the communication in the instant case was not withheld from the defense. As the Seventh Circuit Court of Appeals has explained in putting *Remmer* in context: "the extraneous communication to the juror must be of a character that creates a reasonable suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005) The court can confidently say that a juror mentioning to a friend or family member that the case on which she is serving is a criminal case does not create such a suspicion. Accordingly, petitioner's claim on this matter and his ineffective assistance of counsel claim based on this matter are both frivolous.

Petitioner's claims stemming from the prosecutor "vouching" for the credibility of the state's witnesses are also without merit. Petitioner's claim hinges on two portions of the prosecutor's closing arguments. In one portion the prosecutor detailed the many reasons why he thought the jury should find the testimony of a Mr. Davis (a witness for the state) to be believable. He concluded those remarks by stating:

-6-

Case 2:08-cv-00743-JPS    Filed 04/17/09    Page 6 of 10    Document 4

> I think its clear that [Mr. Davis] wasn't the shooter in this matter and he told you exactly what happened, and he implicated himself, he implicated Mr. Hughes, his good friend and he implicates Mr. Payne, who apparently has a variety of nick names. And implicated all four of these people including himself. *And that makes him credible*.

(Docket #2 at 4 (quoting Trial Transcript at 52-53)) (emphasis added). In the second allegedly improper portion of his closing argument, the prosecutor was explaining why he felt the testimony of a Ms. Berry (a witness for the state) was believable, and he concluded those remarks by stating: "She's the only real eye witness that saw the murder in this case, and *I believe she was a very credible witness and her identification is very credible identification*." (Id.) (emphasis added). Petitioner alleges that these two portions of the closing argument constituted an improper "vouching" for the credibility of Mr. Davis's and Ms. Berry's testimony by the prosecutor. Petitioner cites *U.S. v. Young*, 470 U.S. 1 (1985), for the proposition that "[t]he prosecutor's vouching for the credibility of witnesses – carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* at 18-19. Thus, petitioner argues that the Wisconsin Court of Appeal's rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

The Supreme Court did state in *Young* that it is error "for a lawyer to express a . . . personal belief or opinion in the truth or falsity of any testimony or evidence." ABA Standard for Criminal Justice 4-7.8 (quoted in *Young*, 470 U.S. at 9). However, the Court in *Young* found that the prosecutor's expressions at issue in that case,

while error, were not "plain error," and no new trial was required.[1]  Furthermore, this court is not prepared to say that the prosecutor's statements in the instant case were, in the legal sense, an expression of personal belief or opinion in the truth or falsity of any testimony or evidence.  The prosecutor's statements were clearly permissible under Wisconsin law, which allows a prosecutor or defense counsel to "comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors." *Embry v. State*, 174 N.W.2d 521, 526 (Wis. 1970).  It is merely required that "when such an opinion is expressed it must be clear that it is based solely upon the evidence in the case."  *Id.*  This is undoubtedly to prevent the jurors from thinking that the prosecutor's opinion is based on some knowledge known to him but not to the jury, a danger the *Young* Court pointed to as supporting the prohibition on prosecutors expressing personal opinions about evidence.  *See* 470 U.S. at 18-19.  Not only does Wisconsin state law indicate that the prosecutor's comments did not amount to "personal opinion," but Seventh Circuit law would seem also to indicate as much.  In the Seventh Circuit, a prosecutor "is allowed to comment on the credibility of a witness, including the defendant, as long as the comment reflects reasonable inferences from the evidence adduced at trial rather than personal opinion." *U.S. v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir. 1992). Thus, even where a prosecutor uses the term "I think" in reference to the credibility of a witness, the prosecutor is

---

[1] The reason for the court's very limited discussion of *Young* – indeed, the court has not even set forth the applicable facts from the case – is that much of the reasoning and analysis in *Young* pertained to the issue of "invited responses," which is not at all an issue relevant to the instant case.

-8-

not interjecting personal opinion so long as his statements are grounded in inferences drawn from the evidence.  *See U.S. v. Patterson*, 23 F.3d 1239, 1250-51 (7th Cir. 1994).  Certainly this case presents such a situation, for it is clear from the passages Grafton cites to that the prosecutor's use of the terms "I think" and "I believe" are only used within the context of expressing the reasonable inferences that could be drawn from the proffered testimony.  Therefore, the prosecutor's statements did not contravene the prohibitions articulated in *Young*.[2]  Similarly, given the permissibility of the prosecutor's statements, petitioner's defense counsel was not ineffective in objecting to the statements, and the Wisconsin Court of Appeals did not err in denying petitioner's claims on this matter.

Last, Grafton also seeks an evidentiary hearing pursuant to § 2254(e)(2)(A), so that he can develop a factual basis for his claim that he was prejudiced by the juror's comments on the phone.  He argues that his attorney's failure to pursue the matter prevented him from being able to show that the occurrence caused him actual prejudice, thus he is now entitled to such a hearing.  However, § 2254(e)(2)(B) precludes such a hearing unless "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying

---

[2] Even if the court is mistaken as to the permissibility of the prosecutor's statements, petitioner's claims based on those statements would still be properly dismissed because "[t]o constitute a due process violation, [] prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *U.S. v. Bagley*, 473 U.S. 667, 676 (1985)).  Given the overwhelming evidence against Grafton, and the extremely limited nature of the "misconduct" (if these statements could possibly be construed as such), it is objectively obvious that these statements did not affect Grafton's right to a fair trial.

-9-

offense." Grafton's situation demonstrably does not meet this requirement. Rather, the evidence weighing in favor of a guilty verdict against Grafton was such that indeed almost any reasonable fact finder would have found him guilty of the offense.

Because it plainly appears that Grafton's claims are frivolous, the court will not direct the respondent to file an answer to Grafton's petition, but rather will deny his petition for a writ of habeas corpus.

**IT IS ORDERED** that petitioner's Petition for Writ of Habeas Corpus (Docket #1) be and the same is hereby **DENIED**.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of April 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge